# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**UNITED STATES EQUAL**
**EMPLOYMENT OPPORTUNITY**
**COMMISSION,**

          **Plaintiff,**

**-vs-**                                             **Case No. 6:07-cv-1462-Orl-31KRS**

**MALLINCKRODT, INC., and**
**TYCO HEALTHCARE GROUP LP,**

          **Defendants.**

_____

# ORDER

This matter comes before the Court on the Motion for Summary Judgment (Doc. 34) filed by the Defendants, Mallinckrodt, Inc. ("Mallinckrodt") and Tyco Healthcare Group, L.P. ("Tyco"), and the response (Doc. 38) filed by the Plaintiff, the United States Equal Employment Opportunity Commission (the "EEOC").

**I.    Background**

The EEOC alleges that the Defendants discriminated against George H. Starks, an African American, by denying him a promotion to one of five Regional Operations Manager ("ROM") vacancies. It is undisputed that the five people selected for the positions were Caucasian.

The Defendants manufacture and distribute health care products. Tyco, which is currently doing business as "Covidien," is the parent company of Mallinckrodt. Starks was hired in early 2003 to manage Mallinckrodt's Ft. Lauderdale/Miami nuclear pharmacy location. In May 2004, he was asked to assume the management of Mallinckrodt's Orlando pharmacy as well. By all

accounts, Starks was extremely successful in meeting financial and operational goals for the two pharmacies, dramatically improving their results after he took over.

In March 2005, Starks applied for a promotion to ROM. The Defendants' policy was that anyone who applied for one such position was to be considered for all vacancies during the relevant period. On October 4, 2005, Starks was notified that other candidates had been hired for all five ROM vacancies. Three of the candidates were from inside the company, and two were external hires.

## II.     Legal Standards

### A.     Summary Judgment

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Whether a fact is material depends on the substantive law of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). If there is an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof, that party must "go beyond the pleadings and by . . . affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Summary judgment is mandated against the non-moving party who thereafter fails to present sufficient evidence to establish a genuine issue of fact for trial. *Id.* at 322, 324-25.

In this review, the Court must consider all inferences drawn from the underlying facts in a light most favorable to the non-moving party, and resolve all reasonable doubts against the moving

party. *Anderson*, 477 U.S. at 255. If an issue of material fact exists, the court must not decide it, but rather, must deny summary judgment and proceed to trial. *Environmental Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981).

### B.     Evidence of Discrimination

To establish a Title VII discrimination claim, a plaintiff must present proof of discriminatory intent through either direct or circumstantial evidence. *E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000). "Direct evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption." *Id.* (quoting *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998)). Only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004). Comments or conduct falling short of this mark are, at best, circumstantial evidence. *See id.* Where the plaintiff is able to prove by direct evidence that the employer acted with a discriminatory motive, the employer to prevail must prove, by a preponderance of the evidence, that the same decision would have been reached even absent that motive. *Miles v. M.N.C. Corp.*, 750 F.2d 867, 875-76 (11th Cir. 1985).

In a case where there is no direct evidence of discrimination, a court is to analyze whether summary judgment is appropriate under the familiar framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Department of Community Affairs v. Barton*, 450 U.S. 248 (1981). *See Wilson*, 376 F.3d at 1087. Under that framework, the plaintiff first bears the threshold burden of establishing a prima facie case of discrimination. *Id.* The manner of doing so is not fixed; rather, it depends to a large degree on the situation. *Id.*; *Jones v. Gerwens*, 874 F.2d

1534, 1539 (11th Cir. 1989).  A prima facie case is established, in a given situation, by evidence that tends to eliminate the most common nondiscriminatory reasons for an employer's action.  *See Gerwens*, 874 F.2d at 1539.  Generally speaking, a plaintiff may establish a prima facie case of race discrimination by showing that: (1) she belongs to a racial minority; (2) she was subjected to adverse employment actions; (3) her employer treated similarly-situated employees outside her racial minority more favorably; and (4) she was qualified to do the job.  *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).  Failing that, the plaintiff must, at least, meet the threshold of establishing facts to support a reasonable inference of discriminatory intent.  *Id.* at 1562, 1564; *Wilson*, 376 F.3d at 1087, 1092.

If the plaintiff establishes a prima facie case, a rebuttable presumption of discrimination arises, and the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions.  *Wilson*, 376 F.3d at 1087.  The employer "need not persuade the court that it was actually motivated by the proffered reasons." *Id.* (citation omitted).  If the proffered reason might motivate a reasonable employer, the presumption of discrimination is rebutted.  *Id*.  The plaintiff must meet any such proffered reason head on, rather than quarrel with its reasonableness, and prove that it is a pretext – *i.e.*, the proffered reason did not honestly motivate the employer.  *Id*; *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000) (holding that, regardless of whether the proffered reason is unfair, heavy handed, or based on erroneous facts, the "inquiry is limited to whether the employer gave an honest explanation of its behavior.") (citations omitted).

**III.    Analysis**

According to the Defendants, Mallinckrodt's Director of Manufacturing, Dale Simpson ("Simpson"), was the ultimate decisionmaker regarding the five ROM positions at issue in this case, although "many managers at Mallinckrodt participated in the interview process and offered opinions as to whom they believed should be awarded the ROM positions." One of these managers, according to the Defendants, was Human Resources Manager Patrick Berges ("Berges"). The EEOC also produced deposition testimony from several current and former employees of the Defendants that Berges had a great deal of influence over the ROM promotion decisions.

Regional Operations Manager Roger Saadeh ("Saadeh") testified that in 2005, he interviewed an African American woman, approximately 30 years old, for a pharmacy position in Dallas. When he approached Berges, who is Caucasian, to recommend the woman for the job, Berges told him to be careful of doing so because of the "trifecta effect." According to Saadeh, Berges defined the trifecta effect as (1) child-bearing age, (2) female, and (3) African American. Berges warned Saadeh that the candidate might get pregnant and want to take family leave, and "also it'll be kind of hard to get rid of her because she's a minority." Saadeh also testified that Berges once told him that he needed to "control his boy," referring to Starks.

The EEOC contends that these statements from Berges are direct evidence of discrimination, sufficient to establish its *prima facie* case. The Defendants contend that the statements cannot constitute direct evidence of discrimination because they were not uttered by the decisionmaker, Simpson, and because they do not relate to the employment decisions at issue. On these points, the Defendants are incorrect. The EEOC produced evidence that, if believed, showed

that Berges was closely involved in the promotional evaluations and the decisions that were ultimately made by Simpson regarding the ROM vacancies.  Statements by an individual in Berges' position can constitute direct evidence of discrimination even if that person is not the ultimate decisionmaker, and even if the statement was not made in reference to the particular employment decision at issue.  *See, e.g., Miles v. M..N.C. Corp.*, 750 F.2d at 874-75 (statement by individual who "had influence" over hiring decisions that company had no black workers because "half of them aren't worth a shit" constituted direct evidence of discrimination).

The Defendants contend that the statements are mere "stray remarks" and therefore cannot constitute direct evidence of discrimination, even if they were uttered by an actual decisionmaker. Viewing Saadeh's testimony about the "trifecta effect" statement in the light most favorable to the EEOC, Berges told Saadeh not to hire an African American because minorities are hard to fire. Such a statement obviously suggests that an illegitimate criterion was a substantial factor in Berges' recommendations to Simpson – and by extension in Simpson's ultimate decisions – regarding the ROM positions.  As such, the statement is no mere "stray remark".

The remainder of the Defendants' motion is devoted to the *McDonnell Douglas* framework, arguing (1) that the EEOC cannot establish a *prima facie* case of discrimination by means of circumstantial evidence and (2) that the EEOC cannot prove that the Defendants' reasons for refusing to promote Starks are pretextual.  These arguments have been rendered moot by the Court's findings regarding direct evidence of discrimination.  When a plaintiff is able to prove a case of discrimination by direct evidence, application of *McDonnell Douglas* is inappropriate. *E.E.O.C. v. Alton Packaging Corp.*, 901 F.2d 920, 923 (11th Cir. 1990).

Nonetheless, the Defendants raise several points that ought to be addressed now, rather than at trial. First, the Defendants contend that the EEOC cannot establish its *prima facie* case because it cannot show that Starks was qualified for the ROM positions or that the individuals who were selected for the positions were equally or less qualified for them. (Specifically, the Defendants argue that Starks was not qualified for the ROM positions because he received a "Below Tyco Standards" rating on one of two portions of his fiscal year 2005 performance evaluation, while the three in-house candidates promoted to ROM all received at least a "Meets Expectations" rating on both portions.) However, the Defendants misstate the *prima facie* standard.

To establish a *prima facie* case, the plaintiff in a failure to promote case must demonstrate only that (1) he or she belongs to a protected class; (2) he or she was qualified for and applied for a position the employer was looking to fill; (3) despite qualifications, he or she was rejected; and (4) the position was filled by an individual outside the protected class. *Vessels v. Atlanta Independent School System*, 408 F.3d 763, 768 (11th Cir. 2005). At this stage, to demonstrate that he or she was qualified, a Title VII plaintiff need only show that he or she satisfied an employer's objective qualifications. *Id.* The employer's subjective evaluations of the plaintiff may not be introduced until the later stages of the *McDonnell Douglas* framework. *Id.* "[W]e have made clear that the prima facie case is designed to include only evidence that is *objectively verifiable* and either easily obtainable or within the plaintiff's possession." *Id.* (emphasis in original).

Clearly, any comparison of Starks' performance on the fiscal year 2005 performance evaluation with that of the individuals selected for the ROM positions is improper at the *prima facie* stage. In addition, the Defendants have produced no evidence that a "Meets Expectations"

rating on both portions of that evaluation was a minimum requirement for the ROM positions at issue. Indeed, it would appear to be impossible for the Defendants to do so, as Starks' performance evaluation was dated October 13, 2005, while the new ROMs were introduced to the company on October 4, 2005.[1] In addition, two of the five individuals selected came from outside the company and did not undergo the fiscal year 2005 performance evaluation.

The Defendants never argue that there were any other qualifications for the ROM positions, or that Starks failed to meet them. For its part, the EEOC presents evidence that the only objective qualifications for the positions was that applicants have a B.S. degree in science, which Starks had. The Defendants never dispute the EEOC's contentions that Starks belonged to a protected class, that he applied for the positions at issue, and that the positions were filled by people outside that class. Thus, the Defendants' arguments that the EEOC cannot establish a *prima facie* case are without merit.

In addition, the Defendants argue that the EEOC cannot rebut its proffered reasons for the decision not to promote Starks is flawed. The Defendants contend that Starks was not promoted because he failed to meet their "core values," as demonstrated by certain incidents he was involved in and by his performance on the fiscal year 2005 performance evaluation. However, racially charged remarks when read in conjunction with the entire record can constitute circumstantial evidence of a decisionmaker's discriminatory attitude. *Ross v. Rhodes Furniture, Inc.*, 146 F.3d 1286, 1292 (11th Cir. 1998). In this case, the record includes substantial evidence from which a

---

[1] The EEOC argues that all of the relevant performance evaluations were conducted in January 2006, well after the October 13, 2005 date found on Starks' form. Whatever the precise date might be, the evidence suggests that the fiscal year 2005 performance evaluations were not in existence at the time the ROM positions were filled.

factfinder could conclude that Starks had more experience and generally better evaluations than the other candidates for the ROM positions.  This evidence, when combined with the evidence regarding Berges' remarks to Saadeh, could convince a reasonable factfinder that racial discrimination rather than a failure to meet core values was the motivation for the refusal to promote Starks.

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion for Summary Judgment (Doc. 34) is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on December 11, 2008.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party